**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CAROLINAS ELECTRICAL WORKERS RETIREMENT PLAN, *et al.*, | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 1:14-CV-1807-RWS |
| v. | : : | |
| ZENITH AMERICAN SOLUTIONS, INC., | : : : | |
| Defendant and Third-Party Plaintiff, | : : : | |
| v. | : : | |
| CLACK & ASSOCIATES, P.C. and AGH, LLC, | : : : | |
| Third-Party Defendants | : | |

**<u>ORDER</u>**

This case comes before the Court on Zenith's Motion to Dismiss [10], AGH's Motion to Dismiss [40], and Clack's Motion to Dismiss [50]. After reviewing the record, the Court enters the following Order.

## Background

This action arises out of Defendant Zenith American Solutions, Inc.'s ("Zenith") alleged breach of fiduciary duty in managing the Carolina Electrical Workers Retirement Plan ("Plan"). Plaintiffs are the Plan and its Trustees.

On November 10, 2004, the Plan contracted with Zenith's predecessor-in-interest, Administrative Services, Inc.,[1] to serve as a third-party administrator ("TPA") of the Plan. (Compl., Dkt. [1] ¶ 13.) Zenith's duties as TPA are defined by the 2004 contract. (Id. ¶ 17.) According to Plaintiffs, Zenith's contractual duties relevant to this case were to: "Develop, establish, control and install proper reporting procedures for the collection, verification, deposit, recording and preparation of reports of all payments made to the Trust under the terms of the Collective Bargaining Agreements by an Employee and/or Employer;" "Notify contributing Employers of arithmetical mistakes or use of incorrect contribution rates;" "Maintain statistical data for the Trustees, Auditor and Fund Consultant;" "maintain a Benefit checking account upon which account all Benefit checks will be issued;" "reconcile the Fund's Benefit

---

[1] Administrative Services was later acquired by American Benefit Plan Administrators, Inc., which took over performance of the contract and then merged to become Zenith. (Compl., Dkt. [1] ¶¶ 14, 16.)

2

checking account each month;" and "Processing all applications in accordance with the Plan of Benefits." (Id.; Agreement, Dkt. [1-1] Part III(f)-(h), (k)(4), (8)-(9).) In addition, Zenith undertook to "[a]dvise and assist in the development of the Pension Plan's Rules and Regulations," as well as to provide "suggestions regarding changes" to Plan documents. (Agreement, Dkt. [1-1] Part III(t)-(u).)

Furthermore, the Agreement provides that Zenith "shall not undertake to act as a fiduciary" and:

> will not (a) exercise any discretionary authority or discretionary control respecting the management or administration of the Plan and Trust, or (b) exercise any authority or control with respect to the management or disposition of the assets of the Plan and Trust, or (c) render investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan and Trust.

(Id. Part I.)

The Trustees also engaged Clack & Associates, P.C.[2] to perform accounting and audit services for the Plan. (Compl., Dkt. [1] ¶ 18.) At a Board of Trustees meeting on May 20, 2004, Zenith employee Theresa Warren

---

[2]Clack & Associates and AGH, LLC, Clack's successor-in-interest, were Defendants in this case until Plaintiffs voluntarily dismissed them.

3

recommended that the Trustees convert from a cash-basis accounting method to an accrual-basis accounting method. (Id. ¶¶ 20-21.) Ms. Warren stated that the change would increase the annual interest rate calculation, giving the Plan the appearance of greater financial strength in its annual statements. (Id. ¶ 21.) The Trustees discussed the proposed change, voted to approve the new accounting method, and instructed Zenith to implement the change. (Id. ¶ 24.)

At a regular Board of Trustees meeting on August 26, 2004, Ms. Warren reported that Zenith had sent the Plan's annual statements to Plan participants, and she "explained that the delay in generating those reports was attributable to issues her office faced in reconciling participant accounts given the conversion to accrual basis accounting." (Id. ¶ 25.) The Plan then operated on an accrual basis of accounting for several years. (Id. ¶ 26.)

On June 15, 2011, at another regular meeting of the Trustees, an employee of Clack & Associates "mentioned that an accounting error had been made in the process of converting the Plan's financials over to the accrual basis, and that Defendants had misallocated funds to participants' accounts." (Id.) Until that meeting, the Trustees never knew or suspected "that any accounting error had been made," and Zenith never updated the Trustees "on the

4

reconciliation of participant accounts after the conversion, nor did they provide the Trustees with the accounting data necessary for the Trustees to independently discover any error." (Id. ¶¶ 27-28.)

As a result of the accounting error, the participants' accounts were over-allocated in excess of the Plan's assets. (Id. ¶ 31.) The Trustees voted to hire a forensic accountant to determine the exact amount of the over-allocation. (Id.) At a March 14, 2012 Board meeting, the Trustees reviewed the forensic accountant's report, which concluded that participant accounts were over-allocated by approximately $2.4 million, with an underfunded liability of approximately $1.4 million resulting from overage payments already made to retirees. (Id. ¶ 33.) At the April 4, 2012 Board meeting, the Trustees instructed Zenith to reconcile the participants' accounts. (Id. ¶ 34.) When Zenith completed the reconciliation, the Trustees instructed it to send a notice to all affected participants asking them to refund benefits that were overpaid; however, no participant agreed to return any payments. (Id. ¶¶ 35-36.)

Plaintiffs brought this action under the Employee Retirement Income Security Act ("ERISA") for breach of fiduciary duty based on the accounting error and self-dealing by recommending the new accounting method out of self-

5

interest rather than the best interests of the Plan. Zenith then filed a Third-Party Complaint [32] against Clack & Associates and AGH, LLC. Zenith and the third-party Defendants move for dismissal for failure to state a claim.

## Discussion

**I.      Motion to Dismiss Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most

6

favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. See Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## II. Analysis

Zenith argues that it is entitled to dismissal because (1) it is not a fiduciary under ERISA, and (2) the statute of limitations bars Plaintiffs' claims.

### A. Zenith's Fiduciary Status

Under ERISA's framework,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "Proof of who is the plan administrator [or plan fiduciary] may come from the plan document, but can also come from the

7

factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation of the plan document." Hamilton v. Allen-Bradley Co., 244 F.3d 819, 824 (11th Cir. 2001).  The fiduciary function is not an "all-or-nothing concept," and a defendant is only a fiduciary to the extent that he exercises discretionary authority "with respect to the particular activity at issue." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005).

The particular activity at issue here is the selection of the accrual-basis accounting method and conversion of participants' accounts.  Plaintiffs argue that "the heart of this case is Zenith's duty to manage participant accounts. That duty encompassed all aspects of account management, including periodically calculating the accounts, ensuring the accuracy of account calculations, and notifying participants of account balances." (Pls.' Resp., Dkt. [18] at 7.)  Even though the Agreement states that Zenith would not act as a fiduciary, Plaintiff asserts that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [ERISA] shall be void as against public policy." 29 U.S.C. § 1110(a).  Furthermore, Plaintiff argues that plan

8

administrators generally have discretionary authority "and will therefore be fiduciaries." 29 C.F.R. § 2509.75-8 (D-3).[3]

Defendant, on the other hand, denies that it had discretionary authority under the terms of the Agreement or in practice. Indeed, while an agreement cannot relieve a party of fiduciary responsibilities it otherwise has, here the Agreement states that Zenith could not "exercise any discretionary authority or discretionary control respecting the management or administration of the Plan and Trust" or "exercise any authority or control" over the Plan's assets. (Agreement, Dkt. [1-1] Part I.) Courts hold that "a person is not a fiduciary unless he either has discretion or exercises authority with respect to plan assets." Herman v. NationsBank Trust Co. (Ga.), 126 F.3d 1354, 1365 (11th Cir. 1997).

The language in an agreement, though, is not dispositive because courts must also consider the facts and circumstances surrounding the administration

---

[3] 29 C.F.R. § 2509-75-8 (D-3) states: "Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) of the Act. For example, a plan administrator or a trustee of a plan must, by the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan" and are thus fiduciaries.

9

of the plan. See Hamilton, 244 F.3d at 824. More to the point, the Court must look to the facts and circumstances surrounding the adoption of the new accounting method and Zenith's conversion of participants' accounts to determine if it exercised discretionary authority with respect to these activities. Zenith insists that its activities cannot impose fiduciary responsibility on it because they were ministerial in nature. The Court agrees.

First, the decision to adopt the new accounting method was not Zenith's. Plaintiffs allege that the Trustees voted to approve the change and then "instructed the Defendants to implement the change." (Compl., Dkt. [1] ¶ 24.) Therefore, Zenith did not have the discretionary authority to switch the Plan's accounting methods. See Herman, 126 F.3d at 1365 ("If a person does not have discretion or exercise authority or control in a given situation, he does not meet the definition of a fiduciary.").

Second, Plaintiffs' remaining allegations indicate that Zenith's actions in converting the accounts were not discretionary in nature, either. Although Plaintiffs are correct that plan administrators exercising discretionary authority and responsibility are fiduciaries, administrators "who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who

10

perform" certain administrative functions "within a framework of policies, interpretations, rules, practices and procedures made by other persons," are not fiduciaries." 29 C.F.R. § 2509.75-8 (D-2).  Some of these "purely ministerial functions" include, for example: "Application of rules determining eligibility for participation or benefits;" "Preparation of employee communications material;" "Calculation of benefits;" "Collection of contributions and application of contributions as provided in the plan;" "Preparation of reports concerning participants' benefits;" "Processing of claims;" and "Making recommendations to others for decisions with respect to plan administration." Id.

These activities are similar to what Zenith did here.  Zenith calculated benefits based on the Trustees' decision to change accounting methods, reconciled accounts, processed claims, and sent notices to participants.  And, while Zenith and Clack & Associates initially recommended changing accounting methods, making such a recommendation does not render a party a fiduciary if the decision is made by others, as it was here.  See id.

11

> Nevertheless, Plaintiffs stress that:
>
> Zenith decided whether it or the Clack Defendants would reconcile participant account figures, how and when it would calculate the account balances, when it would report those figures to the participants, if it would report those figures to the Trustees, and how much data concerning Plan assets it would supply to the Clack Defendants and Trustees.

(Pls.' Resp., Dkt. [18] at 8.)  But as shown above, making calculations and preparing reports are not considered discretionary functions when done "within a framework of policies, interpretations, rules, practices and procedures made by other persons." 29 C.F.R. § 2509.75-8 (D-2); see also Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 291 (11th Cir. 1989) ("An insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer . . . ."); Livick v. The Gillette Co., 524 F.3d 24, 29 (1st Cir. 2008) (finding that "providing [plaintiff] with an estimate of his future pension benefits was not a fiduciary task"); Confer v. Custom Eng'g Co., 952 F.2d 34, 39 (3d Cir. 1991) ("Since discretionary authority, responsibility or control is a prerequisite to fiduciary status, it follows that persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be

12

fiduciaries because they do not have discretionary roles."). Here, Zenith performed the relevant activities at the direction of the Trustees and within the framework of the Agreement. Plaintiffs' allegation that Zenith's "allocation overages are the product of basic accounting errors" reinforces the Court's finding that Zenith did not make discretionary decisions regarding the conversion of accounting methods. (Compl., Dkt. [1] ¶ 50.) After all, "[t]he power to err, as when a clerical employee types an erroneous code onto a computer screen, is not the kind of discretionary authority which turns an administrator into a fiduciary." IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1421 (9th Cir. 1997); see also Guardsmark, Inc. v. BlueCross & BlueShield of Tenn., 169 F. Supp. 2d 794, 800 (W.D. Tenn. 2001) ("Entering codes, applying mathematical formulas, and mailing checks are purely ministerial duties."). For these reasons, the Court finds that Zenith did not have the requisite discretionary authority or control over the conduct at issue here and therefore did not owe fiduciary duties.

B.   Statute of Limitations

Even though the Court finds that Zenith is not a fiduciary in this context, the Court also addresses Defendant's argument that the claims are barred by

13

ERISA's statute of limitations.  Under 29 U.S.C. § 1113,

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in cases of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  "The six-year limitation on ERISA actions serves as a statute of repose which bars any action brought after that period of time has run." Stargel v. SunTrust Banks, Inc., 968 F. Supp. 2d 1215, 1234 (N.D. Ga. 2013).

Defendant argues that because the alleged breach took place in 2004, Plaintiffs filed their 2014 lawsuit far beyond the six-year statute of repose. Plaintiffs respond that they have properly pled fraudulent concealment, which tolled the limitations period until the accounting error was reported at the June 15, 2011 Board of Trustees meeting.  Plaintiffs further argue that Zenith

14

breached its duties each year when it calculated participant accounts and reconciled those figures with total Plan assets but failed to correct or inform the Trustees of the "inflated and inaccurate balances" that would have resulted. (Pls.' Resp., Dkt. [18] at 11.)

First, the Court notes that "there must be conduct beyond the breach itself that has the effect of concealing the breach from its victims." In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 242 F.2d 497, 503 (3d Cir. 2001). In that regard, courts require "evidence that the defendant took *affirmative steps* [at any point] to hide its breach of fiduciary duty." Id. (emphasis and alteration in original) (internal quotation marks and citation omitted); see also Larson v. Northrop Corp., 21 F.3d 1164, 1173 (D.C. Cir. 1994) ("There must be actual concealment—i.e., some trick or contrivance intended to exclude suspicion and prevent inquiry." (quotation marks omitted)).

The sole allegation of concealment is this: "To the extent Defendants were aware of the allocation overages, they concealed the error from the Trustees for approximately seven years." (Compl., Dkt. [1] ¶ 51.) Plaintiffs, however, do not allege that Zenith actually knew of the accounting error or allege how Zenith concealed the problem. Plaintiffs do argue in their Response

15

that Zenith hid errors from the Trustees and falsely reported in 2004 that it had reconciled and calculated participant accounts. (Pls.' Resp., Dkt. [18] at 10.) But these allegations do not appear in the Complaint. Plaintiffs just allege that Zenith was instructed to make the accounting change, Zenith reported back that it had done so, and then in 2011 an employee of Clack & Associates reported that an accounting error had been made during the conversion. Although Plaintiffs allege that Zenith never updated the Trustees on the reconciliation of participant accounts after the conversion, Plaintiffs do not allege that Zenith was required to do so, knew about the accounting problem, or otherwise concealed information. These allegations fail to raise a plausible inference that Zenith concealed its breach from Plaintiffs.[4] "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " Iqbal, 556 U.S. at 678 (citation omitted) (quoting Twombly, 550 U.S.

---

[4]Because Plaintiffs do not even plausibly plead fraudulent concealment, the allegations do not come close to satisfying Rule 9(b)'s requirements for pleading fraud with particularity. See Larson, 21 F.3d at 1173 (collecting cases holding that fraud must be pled in accordance with Rule 9(b) to toll ERISA's statute of limitations).

AO 72A
(Rev.8/82)

at 557).  Therefore, Plaintiffs fail to plead concealment that would toll the six-year statute of repose.

Second, Plaintiffs point to § 1113's language that the claim must be brought within six years of "the date of the last action which constituted a part of the breach or violation."  29 U.S.C. § 1113(1)(A).  Plaintiffs allege that Zenith made the accounting error in converting the funds, causing the over-allocation to participants' accounts.  (Compl., Dkt. [1] ¶ 31.)  Plaintiffs do not allege that Zenith made any further accounting errors, but they allege that subsequent overages "should have been obvious to all Defendants by comparing total fund assets to the sum of participant accounts."  (Id. ¶ 50.)  The question is therefore whether Zenith's later failure to identify the overages and correct its accounting error constituted separate breaches or violations.

In an analogous case, Fuller v. SunTrust Banks, Inc., the plaintiff alleged that the defendants breached fiduciary duties to plan participants "by failing to remove [certain investment funds] as investment options due to their high fees and poor performance."  744 F.3d 685, 700 (11th Cir. 2014).  While the Eleventh Circuit easily found that the defendants breached fiduciary duties in selecting the funds, the court still faced the question of "whether the alleged

17

failure to remove the funds in subsequent years constitutes a cognizable breach separate from the allege improper selection . . . so that the six-year limitations period does not bar the claims." Id. at 700-01. The Eleventh Circuit found that the plaintiff's allegations relating to the failure to remove the funds were indistinguishable from the defendant's breach in selecting the funds in the first place. See id. at 701. Namely, in both instances the plaintiff argued that the defendants failed to heed information about the funds' poor performance and high fees, failed to consider alternative investment vehicles, and failed to remove the funds only because retaining the funds benefitted the defendants. Id. The court therefore held that the defendants' continued failure to remove the bad funds "was simply a failure to remedy the initial breach" and did not constitute "a distinct, cognizable breach separate from the alleged breach that occurred at selection." Id.

Here, too, Plaintiffs only allege that Zenith made the accounting error and then failed to correct it. The basis for both breaches is the same: Zenith's accounting failure in converting the funds. Similar to the defendant in Fuller, who failed to remove certain funds as investment options, Zenith did not do anything other than fail to correct the error made during the conversion, even as

18

the over-allocation to some accounts continued each year.  Zenith's subsequent calculations—although resulting in overages due to the initial error in converting the funds—were not separate breaches.  See id. at 699-700 (explaining that "the plaintiffs' 'logic confuse[d] the failure to *remedy* the alleged breach of an obligation, with the *commission of an alleged second breach*, which, as an overt act of its own recommences the [six-year] limitations period' " (emphasis and alterations in original) (quoting Tibble v. Edison Int'l, 729 F.3d 1110, 1120 (9th Cir. 2013))).  Thus, Zenith's continued failure to remedy the initial breach is not a separate, cognizable breach from the initial conversion error.  Consequently, without allegations of fraudulent concealment tolling the statute of limitations, and because the alleged breach occurred in 2004, ERISA's six-year statute of repose bars Plaintiffs' claims.

Because the Court finds that Zenith was not a fiduciary, and because ERISA's statute of limitations bars Plaintiffs' claims, Zenith's Motion to Dismiss [10] is accordingly **GRANTED**.

## Conclusion

For the foregoing reasons, Zenith's Motion to Dismiss [10] is **GRANTED**, and AGH's Motion to Dismiss [40] and Clack's Motion to

19

Dismiss [50] are **DENIED as moot**. With the dismissal of Zenith, the third-party claims against AGH and Clack are also **DISMISSED**. The Clerk shall close the case.

**SO ORDERED**, this   25th   day of March, 2015.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)